UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NFL PROPERTIES LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DOES 1 THROUGH 100, <br><br> Defendants. | Case No. 16-cv-00474 <br> *SEALED* <br><br> **ORDER RE PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER** <br><br> Re: Dkt. No. 4 |

Plaintiffs in this case are NFL Properties LLC ("NFLP"), Panthers Football, LLC d/b/a Carolina Panthers ("Carolina Panthers"), and PDB Sports, Ltd. d/b/a Denver Broncos Football Club ("Denver Broncos"). The Carolina Panthers and Denver Broncos are member clubs of the National Football League ("NFL"), and will meet on Sunday, February 7, 2016 in Super Bowl 50 to vie for the world champion title at Levi's Stadium in Santa Clara, California. Dkt. No. 3.

The NFLP owns all of the NFL's "trademarks, names, logos, symbols, [and] slogans" and is "the authorized representative of the NFL's thirty-two member clubs with respect to the licensing and protection of their trademarks, names, logos, symbols, slogans, and other identifying marks and indicia, including the marks adopted and used by the Carolina Panthers and the Denver Broncos." Dkt. Nos. 3, 4. Based on long experience from prior Super Bowls, the NFLP, Carolina Panthers and Denver Broncos believe that defendants in this case will use the Super Bowl 50 game as an opportunity to sell to the public "unlicensed, counterfeit merchandise ('counterfeit merchandise') and unlicensed, unredeemable counterfeit tickets ('counterfeit tickets') bearing the

//
//
//

NFL trademarks." Dkt. No. 4 at 1. They seek an order restraining that illicit conduct and allowing for the seizure of any infringing or counterfeit goods or tickets.[1]

At the hearing on the motion for ex parte temporary restraining order, seizure order, and order to show cause re preliminary injunction, counsel acknowledged that the seizure of counterfeit merchandise and tickets matters most to plaintiffs. That aspect of plaintiffs' motion -- the request for an ex parte seizure order -- is made under the Counterfeiting Act, 15 U.S.C. § 1116(d), as well as a similar state law, California Business and Professions Code § 14250.

The Court finds that plaintiffs have satisfied the requirements for a seizure order but have proposed an order that overreaches in some aspects and does not go far enough in others. The Court explains here the modifications that are needed to plaintiffs' proposed order. The Court discussed these modifications with counsel at the hearing, and plaintiffs do not object to them. The final seizure order issued concurrently with this opinion will contain the modifications.

As a preliminary matter, the Court was concerned that this case names only "Does 1 through 100" as defendants, with not a single defendant identified by name. Dkt. No. 3. Plaintiffs did not address this issue in their motion. Dkt. No. 4. Our Circuit has stated, however, that although "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored . . . , situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citations omitted).

This case presents the additional twist that there is no discovery at present that would practically be of aid to plaintiffs. That is not because discovery would be futile in the sense that was likely meant by the Ninth Circuit Court in *Gillespie*, but rather because the expected harm has not yet come to pass. As stated by plaintiffs in their motion, "the identities and locations of the

---

[1] This case has been assigned to Senior District Judge Charles R. Breyer who remains the presiding judge (*see* Dkt. No. 7), but Judge Donato is resolving the pending motion and issuing this order as the General Duty Judge in Judge Breyer's absence.

unnamed defendants in this action cannot be ascertained until they commence their illegal counterfeiting activities." Dkt. No. 4 at 21.  It is beyond dispute that a plaintiff has Article III standing to seek injunctive relief against threatened injury that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013).  Plaintiffs have met that bar and the Court finds that justice requires that they be permitted to pursue the requested relief against the Doe defendants while that is the only way that they can be named.  To hold otherwise would rob plaintiffs of their only means of putting a stop to the threatened injury that is clearly impending.

The Court modifies the proposed order as follows:

1. <u>Who May Make the Seizures</u>:  Plaintiffs request an order that would authorize the following persons to effectuate the requested seizures:  "an agent from the Department of Homeland Security and/or other duly authorized law enforcement officer(s) from the Santa Clara, San Jose, and, as available, other Bay Area Counties' Police Departments, *along with NFLP's duly authorized representatives, including private investigators Heather Holdridge of Brand Security Corporation and Wayne Grooms, or any trained person acting under their supervision, direction, and control*."  Dkt. No. 6 at 7 (italics added).

Plaintiffs explained at the hearing that the non-law enforcement personnel were included because they are subject matter experts in that they can distinguish on sight counterfeit goods vs. authentic goods, and they may be needed to handle some back office work post-seizure.  The federal statute plaintiffs have invoked, however, contemplates only seizures by federal, state or local law enforcement officers.  *See* 15 U.S.C. § 1116(d)(9).  Although the state counterpart, California Business and Professions Code Section 14250(b), does not contain the same limitation, it also does not expressly authorize non-law enforcement personnel to take part in the actual seizing of counterfeit goods.  Plaintiffs stated at the hearing that they intend to make seizures only through law enforcement officers, and the Court sees no good reason to allow anyone other than an on-duty federal, state or local law enforcement officer to effectuate a seizure.  *See*, *e.g.*, *World Wrestling Entertainment, Inc. v. Does*, No. 15-CV-01263-VC, 2015 WL 9690312, at *1 (N.D. Cal. Mar. 24, 2015) (raising concern of possible violence should off-duty officers be permitted to seize items).

2.      <u>Scope of Items That May Be Seized</u>:  Plaintiffs seek permission to seize "any and all . . . carton[s], container[s], or vessel[s] in which . . . Counterfeit Merchandise or Counterfeit Tickets are carried, or other containers in which said Counterfeit Merchandise or Counterfeit Tickets are stored, carried, displayed, or transported . . . ."  Dkt. No. 6 at 8.  As drafted, this would arguably permit plaintiffs to seize things like cars or other vehicles in which counterfeit merchandise or tickets are being transported.  This plainly exceeds the scope permitted by the applicable statutes.  *See* 15 U.S.C. § 1116(d)(1)(A) (providing for the seizure "of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation."); Cal. Bus. & Prof. Code § 14250 (providing for the seizure of "any goods, labels, packaging or any components bearing the counterfeit mark and all instrumentalities used in the production of the counterfeit goods . . . .").

3.      <u>When Service of the Order of Seizure Must Be Made</u>:  Plaintiffs request that service of the seizure order be permitted to be made "before or during any delivery, seizure, and impoundment executed pursuant to this order."  Dkt. No. 6 at 8.  The federal statute is clear, however, that the order must be served before any seizure can take place.  *See* 15 U.S.C. § 1116(d)(9) ("The court shall order that service of a copy of the [seizure] order . . . shall be made by [a federal, state or local law enforcement officer], who, *upon making service*, shall carry out the seizure under the order.") (emphasis added).

4.      <u>Amount of Bond</u>:  Both the federal and state statutes require the posting of a bond as a condition of obtaining a seizure order.  *See* 15 U.S.C. § 1116(d)(4)(A) ("the court shall not grant such an application unless the person obtaining an order . . . provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection"); Cal. Bus. & Prof. Code § 14250(b) (court may order seizure "upon the posting of an undertaking"); Cal. Bus. & Prof. Code § 14250(e) ("court shall set the amount of the undertaking . . . in accordance with the probable recovery of damages, costs, and expenses . . . if it were ultimately determined that the goods seized were not counterfeit").  Plaintiffs have proposed $30,000 as the amount of bond, *see*

4

1 Dkt. No. 6 at 9, but the Court finds that this amount is too low.  As plaintiffs state, "[i]n the
2 coming days, hundreds of thousands of fans will arrive in the San Francisco Bay Area to witness
3 the Carolina Panthers play the Denver Broncos in Super Bowl 50," and "eagerly anticipated large-
4 scale entertainment events" such as the Super Bowl "precipitate[] the production and sale of a
5 wide range of counterfeit merchandise and counterfeit tickets."  Dkt. No. 4 at 1, 5.  In this context,
6 $30,000 is simply too low an amount to be sufficient to cover what is effectively a margin of error.
7 The Court will consequently raise the bond amount to $75,000.
8       The Court will issue a separate order that modifies plaintiffs' proposed order on these
9 points.
10 **IT IS SO ORDERED.**
11 Dated:  February 2, 2016

JAMES DONATO
United States District Judge